IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-01765-NRN

ALEXIS BONFIL RIVERA,

     Petitioner,

v.

GEORGE VALDEZ, in his official capacity as Acting Field Office Director, Denver Field Office, Immigration and Customs Enforcement,
JUAN BALTAZAR, in his official capacity as Warden of Denver Contract Detention Facility,
MARKWAYNE MULLIN, in his official capacity as Secretary, Department of Homeland Security,
TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement,
TODD BLANCHE, in his official capacity as Acting U.S. Attorney General,

     Respondents.

---

**ORDER ON PETITIONER'S MOTION TO ENFORCE
THE COURT'S MAY 5, 2026, ORDER (ECF No. 13)**

---

**N. REID NEUREITER
United States Magistrate Judge**

Before the Court is Petitioner's Motion to Enforce the Court's May 5, 2026 Order. ECF No. 13. Respondents filed a response, ECF No. 14, and Petitioner filed a reply, ECF No. 15. The Court heard argument from the parties. *See* ECF No. 18.

## BACKGROUND

On May 5, 2026, the Court issued an Order, ECF No. 11, granting in part the habeas petition, ECF No. 1, and ordering Respondents to provide Petitioner with a bond hearing before an immigration judge ("IJ") under 8 U.S.C. § 1226(a) within seven days. The Court ordered that "Respondents bear the burden of proving by clear and

convincing evidence that Mr. Bonfil Rivera's continued detention is justified due to dangerousness or flight risk." ECF. No. 11 at 6–7 (citing *Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1160 (2026)) (collecting cases). The Order also provided that "**[i]f Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention[.]**" Id.

A bond hearing was held on May 12, 2026. However, Petitioner argues that the IJ did not comply with this Court's Order when she determined that Petitioner posed a risk of danger to the community and was a flight risk. In denying bond, the IJ stated in her written decision,

Respondent has a serious criminal history. *See* Bond Exh 2. On September 16, 2019, the Respondent was convicted in Denver County for felony Possession of a Controlled Substance in violation of C.R.S. § 18-18 403.5(1), (2)(A). He was sentenced to ten days in jail and two years of probation. *Id.* On that same day he was convicted of Driving Under the Influence and sentenced currently. *Id.* On October, 7, 2019, the Respondent [w]as charged with and later convicted of Driving Under Restraint-Alcohol under C.R.S. § 42-2-138(1)(d) and sentenced to thirty days of jail. *Id.* On May 16, 2023, the Respondent was charged with Wrong to Minors, Disturbing the Peace and Assault. The Wrongs to Minors and Assault charges were dismissed. The Respondent was found guilty of Disturbing the Peace and sentenced to one year probation and fines. *Id*. On November 27, 2024, the Respondent was charged with Failure to Display Insurance and Driving Without a License. Both of these charges were dismissed. *Id.* On March 28, 2025, the Respondent was charged with Wrong to Minors, Disturbing the Peace, and Assault. All charges were later dismissed. *Id.*

In addition to his past criminal history, the Respondent's most recent encounter with law enforcement poses that Respondent is not only a danger to community but also a risk of flight. On April 23, 2026, when the Respondent was apprehended by ICE, he refused to cooperate with law enforcement, putting himself, bystanders, and officers at risk of harm. *See* Bond Exh 3. The Respondent refused to exit his vehicle when directed by officers and continued to grip the steering wheel of the car. *Id.* The officers found it necessary to break the driver side window, and the Respondent continued to grip the steering wheel refusing to cooperate with the law enforcement orders to exit the vehicle. *Id.* The officers had to physically

remove the Respondent from the vehicle to effectuate the arrest. *Id.* The Court finds the alleged conduct underscoring Respondent's arrest by ICE to be serious and dangerous alone. However, it also demonstrates that he poses a risk of flight.

ECF No. 12-1.

Petitioner argues that the IJ "provided no analysis as to how two convictions from seven years ago and two charges since that time that were dismissed are clear and convincing evidence that Mr. Bonfil Rivera is now a danger to the community." ECF No. 13 at 2. As to the purported flight risk, Petitioner states that ICE officers followed him and his wife and infant around in their car without identifying themselves—leading Petitioner to drive to a police station to report a kidnapping attempt—and did not give him a chance to cooperate before they threatened to electrocute him and broke the car window. *Id.*; *see also* ECF No. 13-2 (sworn statement of Stephanie Sosa, Petitioner's wife). He also notes that the only evidence presented by the Department of Homeland Security ("DHS") at the hearing—the Form I-213—is full of inconsistencies and errors and was admitted over his counsel's objections. Petitioner maintains that while the IJ stated that DHS bore the burden of proof, she did not actually allocate that burden on the government.

## ANALYSIS

### I. The Court has jurisdiction and exhaustion is not required.

The Court first addresses and rejects Respondent's two threshold procedural arguments in opposition to Petitioner's motion. Respondents claim that: (1) this Court lacks jurisdiction to review the merits of the IJ's discretionary bond order under the Immigration and Nationality Act ("INA"); and (2) even if jurisdiction exists, movant failed

3

to exhaust his administrative remedies by taking an appeal to the Board of Immigration Appeals ("BIA"). *See* ECF No. 14 at 5–9.

As the jurisdictional issue, it is true that 8 U.S.C. § 1226(e) states that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." U.S.C. § 1226(e). "But that is not what the Court is doing by way of this Order. Instead, the Court is assessing whether the IJ applied the legal standard prescribed by this Court and otherwise followed the Court's directives. The Court undisputedly has the authority to enforce its own orders." *Quiroz Zacarias v. Mullin*, No. 26-cv-0574-WJM, 2026 WL 1092162, at *3 (D. Colo. Apr. 22, 2026); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[C]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates.") (internal citation omitted). Thus, this Court has jurisdiction to entertain the motion and to ensure compliance with its original Order.

Respondents' exhaustion argument is likewise unavailing. In the immigration context, "exhaustion of remedies is statutorily required only for appeals of final orders of removal." *See Quintana Casillas v. Sessions*, 2017 WL 3088346, at *9 (D. Colo. Jul. 20, 2017) (citing *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2022), *cert. granted and judgment vacated on other grounds sub nom. by Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003)). "Here, Petitioner is not appealing a final order of removal. Instead, he challenges the constitutional adequacy of the procedures used at his bond hearing.

Thus, exhaustion is not mandatory in the present case." *Suarez Sanchez v. Baltazar*, No. 26-cv-02188-RMR, 2026 WL 1487578, at *2 (D. Colo. May 28, 2026).

## II.    Petitioner is entitled to release.

Turning to the merits of Petitioner's motion, he makes several arguments as to why the bond hearing was deficient.

First, Petitioner claims that the IJ did not articulate the correct burden of proof. He notes that the IJ stated in the written bond decision that a noncitizen "who fails to meet his burden will properly be denied bond." ECF No. 12-1 at 2. This statement plainly contravenes the Court's order. Petitioner further observes that the IJ cited BIA decisions in which the noncitizen bore the burden of proof at the bond hearing. *See id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), for proposition that the IJ had broad discretion in deciding factors she may consider when deciding whether to release on bond). As Judge R. Brooke Jackson observed, the analytical approach where the IJ considers the totality of the evidence in the record, without regard for what party offers the evidence or in the order in which it was considered, raises the risk of impermissibly shifting the burden on the noncitizen:

> To be clear, the court may consider the evidence submitted by the noncitizen. But the strength or paucity of that evidence cannot substitute for the government's obligation to establish danger or flight risk by clear and convincing evidence in the first instance. Only after the IJ is satisfied that the evidence proffered by DHS, standing on its own, establishes "a firm belief or conviction" that release on bond is not warranted should the court consider whether the noncitizen's evidence sufficiently rebuts, mitigates, or undermines the government's showing.

*Cervantes Arredondo v. Baltazar*, No. 25-cv-03040-RBJ (D. Colo. Dec. 18, 2026), ECF No. 26.

5

On the other hand, the Court is cognizant that the IJ, both in her oral ruling and the written decision, correctly stated that the Department of Homeland Security ("DHS") bore the burden of proving by clear and convincing evidence that Petitioner's continued detention is justified due to dangerousness or flight risk. *See* ECF No. 12-1 at 2, 3; ECF No. 17 at 6. Thus, the Court turns to Petitioner's second argument, that, regardless of what she claimed, the IJ did not apply the proper burden of proof.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quotation omitted). "To prove a fact by clear and convincing evidence is a heavy burden that equates to showing the fact is 'highly probable.'" *United States v. Dear*, 104 F.4th 145, 147 (10th Cir. 2024) (quoting *Florida v. Georgia*, 592 U.S. 433, 438–39 (2021)).

> In assessing dangerousness or flight risk, and IJ may take into account
>
> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I. & N. Dec. at 40. It must be emphasized again that, per this Court's Order, the burden falls on the DHS to show that the noncitizen is a danger to the community or flight risk.

Petitioner states that the I-213, which was the only evidence DHS submitted, "was not signed, was not otherwise authenticated, and contained so many errors and inconsistencies as to render it unreliable." ECF No. 13 at 5. The motion lists the catalogue of inexplicable mistakes:

> For example, the I-213 incorrectly states that Mr. Bonfil Rivera is "not married" and "does not have children," but he is married with two U.S.-citizen children. *Compare* Ex. 1 with Ex. 2. The I-213 also inconsistently states: that he is both "30" years old and "32" years old (he is 31 years old); that the Officers were wearing "highly visible 'ICE' markings" (*but see* Ex. 2 at 9); that his first name is "Jesus" (it is Alexis); that there both was a warrant "signed by a supervisor" (which he was never served with and was never filed with the immigration court) but simultaneously that he "was likely to escape before a warrant could be obtained;" that he "re-entered the United States" without permission after previously being in the United States (not true); that his last names are "Zarate Rueda" (they are Bonfil Rivera); that he "has no immigration petitions or applications pending or approved (he has an approved I-130 petition and an approved I-601A waiver application); and that he claimed no fear of persecution if returned to "Colombia" (he is alleged to be a citizen of Mexico).

*Id.* at 5–6 (footnote omitted). These inconsistencies are troubling; indeed, the IJ stated, "[Y]ou certainly give me concerns in regards to some of the information on there, and I'll be giving it the weight that I deem necessary based on whatever the next testimony is." ECF No. 17 at 4. However, the IJ's decision does not attempt to resolve—does not even address, in fact—any of the numerous and obvious irregularities. This is especially significant because the IJ relied on this evidence in support of her conclusion that, based on Petitioner's encounter with ICE agents as described in the I-213, Petitioner was dangerous and a flight risk. She did so in the face of—not only the I-213's "concerning" discrepancies—but also Petitioner's rebuttal evidence, which included:

> statements that immigration officers (1) followed him in an unmarked car for hours while his wife and young children were in the vehicle, (2) chose not to arrest him when he exited his vehicle at a Denver Police precinct, (3) were not wearing any clothing to identify them as immigration officers—only "Police," (4) were not identified as Immigration officers when they stopped

his car by pulling in front of him and cutting him off, and (5) shouted at him, in English, a language he did not understand, that they were going to use a taser on him if he did not get out of the car. *See* Ex. 2 at 2. Mr. Bonfil Rivera drove to the Denver Police precinct out of fear that he was being followed and did not know who was following him. Getting no help from the Denver Police, he returned to his vehicle, where Immigration officers continued to surveil him and could have easily arrested him there while he was outside of his vehicle. Instead of acting at that time, officers damaged Mr. Bonfil Rivera's vehicle by destroying the driver's side window of the vehicle's door. They damaged his shirt when they ripped him out of the vehicle, to the horror of his spouse and young daughter. And most critically, at no point did Mr. Bonfil Rivera make any attempt at eluding or fleeing the officers. He simply did not understand what they were shouting at him. *See* Ex. 2 at 2.

ECF No. 13 at 7. In deeming Petitioner a flight risk, the ALJ also failed to address the fact that Petitioner lived continuously in the United States for eleven years, has three children who are U.S. citizens, and has stable housing and employment. Accordingly, the Court has little trouble concluding that the IJ did not adhere to the burden allocation required by this Court's Order when she determined that Petitioner's "most recent encounter with law enforcement poses that Respondent is not only a danger to community but also a risk of flight."

The IJ's treatment of Petitioner's "serious criminal history" is a closer question. As an initial matter, Petitioner does not appear to contest the validity criminal charges and convictions identified by Plaintiff. Thus, there is clear and convincing evidence that in 2019, Petitioner was convicted of felony Possession of a Controlled Substance (sentenced to ten days in jail and two years of probation), Driving Under the Influence ("DUI"), and Driving Under Restraint-Alcohol (sentenced to thirty days of jail).[1] On May

---

[1] At the hearing, DHS counsel indicated that Petitioner has "two DUI convictions," apparently under impression that Driving Under Restraint-Alcohol is a form of DUI. But Colo. Rev. Stat. § 42-2-138(1)(d) applies to drivers who lost their license for driving under the influence or another alcohol-related offense and were subsequently arrested for driving without a license. It is a serious crime, but it is not a "DUI conviction."

16, 2023, Petitioner was charged with Wrong to Minors, Disturbing the Peace, and Assault. The Wrongs to Minors and Assault charges were dismissed, and Petitioner was found guilty of Disturbing the Peace and sentenced to one year probation and fines. The IJ also noted 2024 and 2025 charges that were dismissed.

At the hearing, the ALJ observed that "DUIs have been found to be inherently dangerous." ECF No. 17 at 6. To be sure, "[d]runk driving is an extremely dangerous crime." *Begay v. United States*, 553 U.S. 137, 141 (2008). "Drunk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year." *Birchfield v. North Dakota*, 579 U.S. 438, 443 (2016). However, while a history of DUI violations can meet the high standard of clear and convincing evidence, "courts must consider the remoteness of the DUI and intervening events that might undermine a finding of dangerousness." *Obregon v. Sessions*, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017); *see also Matter of Guerra*, 24 I. & N. Dec. at 40 (the extensiveness and recency of criminal offenses is relevant to a determination of dangerousness or flight risk). "'When it comes to non-violent crimes, especially those caused by addiction, the passage of time does make a difference, as does the availability of treatment options.'" *Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062–63 (N.D. Cal. 2020) (alteration omitted) (quoting *Obregon*, 2017 WL 1407889, at *8).

Here, the IJ did not explain why seven-year-old convictions for DUI, possession of a controlled substance (it is unstated what the substance was), and/or driving under restraint make Petitioner, *at the present moment*, a danger to society. DHS offered no evidence that Petitioner currently drinks or uses drugs, or that he has committed any

9

other serious traffic offenses. These old convictions, standing alone, cannot establish dangerousness. *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1118 (S.D. Cal. 2008) (government did not establish dangerousness, as a matter of law, by pointing only to past DUI convictions that were four to six years old).

The IJ's decision also refers to a 2023 conviction for disturbing the peace, but the record before the Court offers no other information about that charge and the IJ does not describe what happened, making it impossible to assess its seriousness. Nor does the IJ explain how dismissed criminal charges could constitute clear and convincing evidence that Petitioner is a present danger to the community, and the Respondents do not address this question in their response.

Under these circumstances, the Court finds that IJ failed to comply with this Court's order directing that the Respondents bear the burden of justifying Petitioner's detention by clear and convincing evidence.

While some courts have ordered a second bond hearing employing the constitutionally required standards, *see Mejia v. Baltazar*, No. 26-cv-00385-NYW-TPO, 2026 WL 1361514, at *4 (D. Colo. May 15, 2026) (citing cases), the Court finds that an order of immediate release is warranted. "Due process is not satisfied by rubberstamp denials of bond." *Id.* at *3 (citations omitted). As Judge William J. Martinez recently noted, "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Singh v. Valdez*, No. 26-cv-1109-WJM, 2026 WL 890240, at *5 (D. Colo. Apr. 1, 2026). "The Court sees no reason to order another bond hearing—and risk a third constitutional violation—and prolong the detention that this Court has already

determined is unlawful." *Meija*, 2026 WL 1361514, at \*5; *see also Quiroz Zacarias*, 2026 WL 1092162, at \*5 (ordering immediate release and recognizing that "[r]equiring [the petitioner] to undergo yet another" bond hearing "would only add further insult to the constitutional injury to which Petitioner has already been subjected.").

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

1) Petitioner's Motion to Enforce the Court's May 5, 2026 Order. ECF No. 13, is **GRANTED**;

2) Respondents **SHALL RELEASE** Petitioner within **48 hours** of the issuance of this Order; and

3) On or before July 30, 2026, the Parties shall file a joint status report confirming Mr. Bonfil Rivera's release and informing the Court whether further proceedings are required in this case.

Dated: July 23, 2026

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

11